United States District Court
Southern District of Texas

**ENTERED**

October 30, 2019

David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JILL KATHRYN PETERSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| DONALD JONATHAN PETERSON, | § | |
| JAMES R. MORTON, | § | |
| NOVUS INITIUM, INC., | § | |
| SERCO INC., | § | Case No. 4:18-CV-4837 |
| SERCO GROUP PLC, | § | |
| SERCO LTD., | § | |
| KHALID ALTAEE, | § | |
| ADAM FAHIL, | § | |
| HUSSEN AL-AUKEILY, | § | |
| MOHAMMED AL-SAADY, | § | |
| VENECIO DE SILVA, | § | |
| MURTHANA AL-ANBAKY, | § | |
| MURTHANA ADINWEESH, | § | |
| RIAD CHEHAYAB, | § | |
| ROM JAY ADENIP, | § | |
| NASRO GARGUITA, | § | |
| | § | |
| *Defendants.* | § | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Jill Kathryn Peterson ("Plaintiff" or "Mrs. Peterson") filed suit

against her husband Donald Jonathan Peterson ("Mr. Peterson"), James R. Morton

("Morton"), Novus Initium Inc. ("Novus"), Serco Inc., and various other individual defendants (collectively, "Defendants") alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. *See* Complaint, ECF No. 1 ("Compl."). Pending before this Court are three motions to dismiss under Rule 12(b)(6) for failure to state a claim, Rule 12(b)(2) for lack of personal jurisdiction, and Rule 12(b)(5) for insufficient service of process. Motions to Dismiss, ECF Nos. 24, 33, and 36.[1] In response to these motions, Plaintiff filed a second amended complaint, adding Serco Group PLC and Serco Ltd. as defendants. *See* Second Amended Complaint, ECF No. 37 ("Second Am. Compl.").[2] Defendants Serco Inc., Serco Group PLC, and Serco Ltd. (the "Serco Entities"), Venecio De Silva ("De Silva"), Riad Chehayab ("Chehayab") (collectively, "Serco Defendants") moved to strike the second amended complaint for failure to seek leave under Rule 15(a)(2). Serco Defs.' Mot. to Strike, ECF No. 38.

---

[1] The District Judge to whom this case is assigned referred it to this Court for all non-dispositive and other pretrial matters for determination and all potentially dispositive motions in this case for Report and Recommendation. Order of Referral, ECF No. 32; *see* 28 U.S.C. § 636(b)(1).

[2] In the alternative to her RICO claim, Plaintiff alleges claims of: (1) investment fraud in violation of Texas common law and failure to adhere to IRS reporting requirements in violation of 31 U.S.C. § 5313, Second Am. Compl. at 22-24 (citing *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011)); (2) money laundering in violation of 18 U.S.C. §§ 1956 and 1957, *id.* at 24-27; (3) violations of the Internal Revenue Code, 26 U.S.C. §§ 7201, 7203, and 7206, *id.* at 27-29; (4) illegal wiretapping in violation of 18 U.S.C. § 2511, Chapter 123 of the Texas Practice and Remedies Code, and the Texas Penal Code 16.02(b), *id.* at 29-30; (5) unlawful installation of a tracking device in violation of Chapter 16.06(b) the Texas Penal Code, *id.* at 30-31; (6) wire fraud in violation of 18 U.S.C. § 1343, Second Am. Compl. at 31-33; (7) witness intimidation in violation of 18 U.S.C. § 1512, *id.* at 33-36; (8) violation of the Foreign Corrupt Trade Practices Act, 15 U.S.C. § 78dd-1, *id.* at 36; and (9) phone and internet fraud in violation of 18 U.S.C. §§ 1030 and 1343, *id.* at 36-37.

The Court held a status conference at which all counsel appeared and presented their arguments. *See* Min. Entry dated June 18, 2019. In addition, the Court issued a show cause order requiring additional briefing on abstention in light of the pending divorce between the Petersons. Show Cause Order, ECF No. 55. Plaintiff opposes the application of abstention; whereas Defendants assert that abstention provides an additional basis for the Court to dismiss. *See* ECF Nos. 58-61.[3] Based on a careful review of the pleadings, motions, additional briefing, and arguments of counsel, the Court has determined that the abstention doctrine under both *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and *Younger v. Harris*, 401 U.S. 37 (1971), require dismissal.

## I.     BACKGROUND

The following factual allegations are taken from Plaintiff's Second Amended Complaint.

The Petersons were married and lived in Spring, Texas until Plaintiff moved out and filed for divorce in September of 2017. Second Am. Compl. at 4-5. Mr. Peterson is an air traffic controller instructor and the Head Training Officer for

---

[3] This case is related to a pending divorce in a Texas family court in the 308th District Court of Harris County. *In the Matter of the Marriage of Jill Kathryn Peterson and Donald Jonathan Peterson*, No. 2017-58639. *See* Motion to Dismiss, ECF No. 24 ("Peterson Mot. to Dismiss") at 1. Prior to filing this suit, Plaintiff filed a parallel state court case, asserting virtually identical claims except for the RICO claim, *Jill Kathryn Peterson v. Donald Jonathan Peterson, et al.,* No. 2018-18412, in the 129th District Court of Harris County, which was consolidated into the divorce case. *See* Peterson Mot. Dismiss, ECF No. 24 at 1.

Serco Ltd. in Baghdad. *Id.* at 6, 10.[4] Mr. Peterson, along with Morton and other individual defendants, created Novus, a Texas corporation performing international work in the air traffic control business. *Id.* at 7, 13. According to Mrs. Peterson, Novus is a "bogus corporation . . . which has never done any real business." *Id.* at 10. She alleges the unlawful activity identified in her complaint occurred through Novus, and to a lesser extent the Serco Entities.

Mrs. Peterson alleges Mr. Peterson is the "ringleader of [a] racketeering conspiracy" whereby he defrauded investors (including Mrs. Peterson), bribed foreign officials so he could pursue unlawful business abroad, and committed several violent acts in furtherance of the conspiracy. *Id.* at 10-11. Specifically, Mr. Peterson represented that he would invest $270,000 of community assets in Novus. Instead, he used the money to engage in an illegal export scheme, purchasing cell phones in the United States and exporting them for sale in Iraq and "perhaps" Iran. Second Am. Compl. at 3-5. He allegedly used his connections as an air traffic controller to bribe foreign officials to import the cell phones into those countries without paying duties or taxes. *Id.* at 6. Allegedly, Mr. Peterson, along with other defendants, performed work for Novus but paid themselves instead of the company, thereby

---

[4] Serco Ltd. is headquartered in Dubai and is a subsidiary of Serco Group PLC ("Serco Group"), a publicly traded corporation of the United Kingdom. Second Am. Compl. at 5, 15; *see* List of Serco Group's Subsidiaries, attached as Ex. 2 to Mot. to Dismiss, ECF No. 36 ("List of Subsidiaries"). Serco Inc. is also a wholly-owned subsidiary of Serco Group and is headquartered in Virginia. Second Am. Compl. at 4, 14; *see* List of Subsidiaries.

"defrauding its investors and the US tax authorities." *Id.* at 2. According to Mrs. Peterson, "[i]t is possible" that the money earned from these activities has been placed in overseas accounts in Dubai or converted into financial instruments, such as stocks or warrants, of Serco Group PLC. *Id.* at 6. Mrs. Peterson never received shares of, or income from, Novus, nor did Mr. Peterson ever report any earnings to the IRS. *Id.* at 5-6.[5]

Because Mrs. Peterson witnessed numerous meetings involving the exchange of money and electronics, purportedly illegal acts, she claims she became a threat to Mr. Peterson and his alleged criminal enterprise when they separated. Second Am. Compl. at 4-5, 9. As a result, she claims that Mr. Peterson attempted to silence and intimidate her, directing "terroristic threats, assault and sexual assault" against her. *Id.* at 6.[6] Consequently, she obtained a protective order against Mr. Peterson from the family court. *Id.* at 33, 35.

Mrs. Peterson makes two other allegations involving misuse of her money.

---

[5] Plaintiff also alleges that Mr. Peterson filed false tax returns with the IRS from 2015 to 2018, omitting income even from his legitimate business activities, placing Plaintiff in jeopardy and forcing her to seek innocent spouse status. *Id.* at 9, 21.

[6] This "campaign of intimidation and physical and psychological terrorism [included] terroristic threats by the phone, assault, rape, hacking phone and email communication[,] and tracking her vehicle." *Id.* at 11. For example, between October 2017 and July 2018, Mrs. Peterson received numerous phone calls from "persons with a Middle Eastern accent" threatening death and disfigurement if she continued to complain about Mr. Peterson. *Id.* at 31-32. Mrs. Peterson also alleges she was raped and physically assaulted by four individual defendants on December 31, 2017 at the direction of Mr. Peterson. *Id.* at 34-35.

First, to evade taxes, Mr. Peterson concealed $266,000 in community assets in an unknown offshore location, in violation of the family court's temporary orders. *Id.* at 24-25. Second, Mr. Peterson "presumably" took $236,000 of Mrs. Peterson's separate property, an inheritance from her mother, and "possibly" invested it in Novum or an overseas account. *Id.* at 5, 24.

According to Mrs. Peterson, these activities constitute a "racketeering scheme to defraud Plaintiff Peterson and steal her corporate interest," and the "use of . . . entities controlled by Peterson . . . arises to the status of a criminal enterprise as required by the RICO statute." Second Am. Compl. at 18. Although Plaintiff makes claims involving the other defendants, the facts and relief sought in this case arise out of the divorce and property dispute between the Petersons. For example, as relief, Mrs. Peterson requests that: (1) Mr. Peterson return all unaccounted-for community assets to the United States; (2) a constructive trust be placed on all of Mr. Peterson's assets in the United States; and (3) Mr. Peterson amend the couple's IRS tax returns for the years 2015 to 2018. *Id.* at 28, 38.[7]

---

[7] In addition, Plaintiff asks that any damages under RICO be tripled pursuant to 18 U.S.C. § 1964(c) and that she be awarded attorney's fees and costs. Second Am. Compl. at 38-39. Plaintiff also asks for damages pursuant to a jury determination for counts four through nine. *Id.* at 38.

## II.   THE COURT SHOULD ABSTAIN FROM INTERFERING WITH PENDING STATE COURT DIVORCE AND DIVISION OF PROPERTY PROCEEDINGS

Federal courts have "a strict duty to exercise the jurisdiction that is conferred upon it by Congress," *Metro Riverboat Assocs., Inc. v. Bally's La., Inc.*, 142 F. Supp. 2d 765, 772 (E.D. La. 2001), and therefore "a district court should abstain from hearing a case with considerable reluctance, given the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Begum v. Miner*, No. 99-CV-20027, 2000 WL 554953 (5th Cir. Apr. 20, 2000) (quoting *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). As a result, "'abstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993) (alterations omitted) (quoting *Colo. River*, 424 U.S. at 813). Nonetheless, the Supreme Court has articulated two abstention doctrines, *Burford* and *Younger*, which are applicable to this case. *See Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The court may raise either *sua sponte* at any point in the proceedings. *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999); *see, e.g.*, *Estate of Merkel v. Pollard*, 354 F. App'x 88, 89 (5th Cir. 2009) (*Burford* abstention); *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003) (*Younger* abstention).

"The *Younger* and *Burford* abstention doctrines . . . are founded on considerations of comity and federalism," and they are meant to "'extricate the federal courts from situations where the assertion of jurisdiction would intrude into the state court['s] proper domain.'" *Lawrence v. Cohn*, 932 F. Supp. 564, 580 (S.D.N.Y. 1996) (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 108 (2d Cir. 1995)). Underlying *Burford* abstention is the "belief that in particular areas of the law any intervention by the federal court would have an impermissibly disruptive effect on state policies." 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4245 (3d ed. 2019); *accord Metro Riverboat*, 142 F. Supp. 2d at 767. "*Burford* abstention is appropriate where a major case presents issues of state law such that the state has an overriding interest in their determination." *United Home Rentals, Inc. v. Tex. Real Estate Comm'n*, 716 F.2d 324, 331 n.15 (5th Cir. 1983). Underlying *Younger* abstention is "a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).[8]

Courts routinely use both doctrines to abstain from domestic relations matters

---

[8] "Although *Younger* abstention originally applied only to criminal prosecutions, it [now] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008) (citations omitted) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)).

involving divorce, property division, and child custody. *See, e.g.*, *Pollard*, 354 F. App'x at 95 (*Burford* abstention); *Begum*, 2000 WL 554953, at *4 (*Burford* abstention); *Machetta v. Moren*, No. 16-CV-2377, 2017 WL 2805192, at *6 (S.D. Tex. Apr. 13, 2017) (*Younger* abstention), *report and recommendation adopted*, 2017 WL 2805002 (June 28, 2017), *aff'd*, 726 F. App'x 219 (5th Cir. 2018); *Lawrence*, 932 F. Supp. at 580-81 (*Younger* and *Burford* abstention). "'[I]n general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts.'" *Pollard*, 354 F. App'x at 92 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 13 (2004)).[9]

## A. The Court Should Abstain Under *Burford* Because the Balance of Factors Weighs in Favor of Abstention and Exercising Jurisdiction Would Create the Risk of Conflicting Judgments.

Under *Burford* abstention, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of

---

[9] Federal courts leave domestic relations matters to the states in two ways: abstention and the domestic-relations exception. *Pollard*, 354 F. App'x at 92. The domestic-relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). However, this exception only applies to cases involving diversity jurisdiction. *Pollard*, 354 F. App'x at 92. This action was brought under RICO, and thus the domestic-relations exception does not apply. *See id.*

federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("NOPSI"), 491 U.S. 350, 361 (1989) (quotations omitted); *see Valley Elec.*, 8 F.3d at 314.[10] "*Burford* abstention is concerned with protecting complex state administrative processes from undue federal interference," *Illinois Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) (quotations omitted), but it is not strictly limited to cases involving state administrative agencies, *see Pollard*, 354 F. App'x.

---

[10] The two pre-requisites for dismissal of a case under *Burford* are that "timely and adequate state-court review [be] available" and that "the federal court be sitting in equity or otherwise petitioned for discretionary relief." *Pollard*, 354 F. App'x at 93. Both pre-requisites are met in this case. First, RICO claims can be heard in state court, *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) ("[S]tate courts have concurrent jurisdiction to consider civil claims arising under RICO. Nothing in the language, structure, legislative history, or underlying policies of RICO suggests that Congress intended otherwise."), and Plaintiff has initiated state court proceedings in which her RICO violations could be alleged. *See* Fourth Amended Complaint, attached as Ex. 1 to Mot. to Dismiss, ECF No. 33 (making substantially the same factual allegations as the Second Amended Complaint in this proceeding).

Second, Plaintiff has asked the Court for several forms of equitable relief, including an order requiring "the return of all the community assets to the United States" and that Mr. Peterson be required to file amended tax returns for 2015 to 2018. Second Am. Compl. at 38. In addition, Plaintiff requests "that a constructive trust in [her favor] be placed on all of Donald Peterson's assets in the United States." *Id.* at 28. These are requests for equitable relief. *See* CARYL A. YZENBAARD ET AL., THE LAW OF TRUSTS AND TRUSTEES § 471 (2019) ("The constructive trust may be defined as a device used by equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs."); *see also Todd v. DSN Dealer Serv. Network, Inc.*, 861 F. Supp. 1531, 1541 (D. Kan. 1994) ("The court believes that the relief sought by the plaintiff [which includes a constructive trust] is sufficient to support a finding that the court is sitting in equity, at least in part. Contrary to the argument made by the defendant, there is no requirement that the majority of the case seek equitable relief. The only requirement is that the court be 'sitting in equity.' A request for some equitable relief would require the court to sit in equity, at least for some aspect of the case. Sufficient equitable relief is requested here for the exercise of *Burford* abstention if otherwise appropriate.").

at 93-94 ("Although *NOPSI* speaks of interference with the proceedings or orders of state administrative agencies, the Supreme Court has since provided more generalized descriptions of the *Burford* doctrine; and, as such, our court has held *Burford* abstention is not limited to where the state regulatory scheme is fully in place.") (quotations and citations omitted).

Although "there is no 'formulaic' approach as to the application of the *Burford* doctrine," the Fifth Circuit has identified five factors in considering whether *Burford* abstention is appropriate: "(1) whether the cause of action arises under state or federal law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review." *Metro Riverboat*, 142 F. Supp. 2d at 773-74; *accord Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009)*; Valley Elec.*, 8 F.3d at 314. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Priester v. Long Beach Mortg. Co.*, No. 16-CV-449, 2017 WL 4366997, at *2 (E.D. Tex. Sept. 13, 2017), *report and recommendation adopted*, 2017 WL 4354922 (Oct. 2, 2017); *see, e.g.*, *Tureau v. BEPCO, L.P.*, No. 18-CV-973, 2019 WL 3801654, at *8

(W.D. La. Aug. 12, 2019) (holding *Burford* abstention appropriate even when one factor did not support abstention).

As to the first factor, courts must look deeper than the named cause of action to determine whether the case arises out of state or federal law. *K-7 Enters., L.P. v. Jester*, 562 F. Supp. 2d 819, 826 (E.D. Tex. 2007). "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'" *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996)).

Here, Plaintiff alleges violations of RICO as her federal cause of action. However, her RICO claim is inextricably entangled in state court issues. For example, the money Plaintiff alleges to have been invested in Novus and otherwise used in furtherance of illegal activities was primarily marital property subject to multiple state court orders. *See* Second Am. Compl. at 8 ("Monies from the Peterson estate . . . were invested in [Novus], including monies invested by Peterson during the divorce proceeding, i.e., after the filing of the divorce and in violation of the Agreed Temporary Orders of October 2, 2017 from the 308th District Court that prohibited such monies from being diverted in any way."). Plaintiff also alleges Mr. Peterson removed $270,000 worth of the couple's assets to conceal them abroad,

again in violation of the state court orders. *See id.* at 24 ("[Peterson] removed in contravention of the agreed temporary orders dated October 2, 2017 in the divorce action in the 308th District Court . . . to an unknown offshore location significant assets of the couple . . . of which $133,000.00 is [Plaintiff's] community share.").[11] Furthermore, the relief Plaintiff seeks—namely the return of the community and separate property assets to the United States, the imposition of a constructive trust on Mr. Peterson's assets, and damages in the amount fraudulently taken from her— is the subject of the temporary state court orders and will be the subject of any permanent division of property. *See id.* The first factor thus weighs in favor of abstention. *See, e.g.*, *Pollard*, 354 F. App'x at 94 ("The estate's federal quiet-title claim is clearly entangled in a skein of state law. No one disputes Pollard is liable for unpaid federal income taxes; the only issue is the degree and nature of his ownership interest in the house. For this appeal, and the only issue raised for it, this issue turns entirely on Texas domestic-relations law.") (quotations omitted); *Koerner v. Garden Dist. Ass'n*, 78 F. App'x 960, 963 (5th Cir. 2003) (unpublished) ("Even though Koerner has framed his claims as arising under federal law, the underlying issues presented are purely state law issues."); *Guthrie v. Ditech Fin.,*

---

[11] In addition, the threats of violence and physical assault that Plaintiff alleges are RICO predicate acts were motivating factors behind her state court protective order against Mr. Peterson. *See* Second Am. Compl. at 33 ("[The threats of violence] were partially the motive of the Protective Order 2018-43315 issued by the 280th District Court of Harris County, Texas, signed on August 27, 2018 against [Peterson]. Plaintiff is seeking a renewal of said Protective Order through the Family Violence Division of the District Attorney of Harris County, Texas."); *see also id.* at 35.

*LLC*, No. 16-CV-171, 2016 WL 10590160, at *4 (W.D. Tex. July 27, 2016) ("Here, Plaintiffs' claim arises out of state-initiated foreclosure proceedings. Because Plaintiffs' claims arise under state law, this factor weighs in favor of abstention.") (citation omitted), *report and recommendation adopted*, 2016 WL 10590157 (Aug. 30, 2016).

As to the second factor, the Court does not have enough information to conclude whether the case involves unsettled issues of state law. This factor thus does not weigh in favor of, or against, abstention.

As to the third factor, "the importance of Texas'[s] interest in its own domestic-relations law is obvious." *Pollard*, 354 F. App'x at 94. In fact, "there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law." *DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th Cir. 1987).[12] "Not only divorce, but the allocation of property incident to a divorce, are longstanding local functions governed by state law. . . . Divorces are frequently accompanied by disputes about property, including both interim and final allocations. Such state court authority would be threatened if civil RICO actions

---

[12] The Fifth Circuit has recognized two separate issues with its *DuBroff* opinion: (1) the court failed to recognize it had exclusive federal jurisdiction over the plaintiff's securities law claim; and (2) the court relied on *New Orleans Public Service, Inc. v. City of New Orleans*, 798 F.2d 858 (5th Cir. 1986), which was later overturned by the Supreme Court. *See Evans v. Dale*, 896 F.2d 975, 978 (5th Cir. 1990). Neither of those issues are present in this case; Mrs. Peterson has not alleged a federal securities law claim, and the rationale from *DuBroff* that applies to this case remains good law.

become the shadow proceeding for policing such disputes." *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997).

This case is, at its core, a divorce and property dispute. As described above, the allegations of fraudulent investment and improper concealment of assets pertain primarily to what Plaintiff claims are community property. At least two of the alleged RICO predicate acts are the subject of state court protective orders. And the relief sought would require the Court to place a constructive trust on Mr. Peterson's assets, all while the state court is presumably doing the same in the ongoing divorce proceeding. This factor, therefore, weighs heavily in favor of abstention. *See Pollard*, 354 F. App'x at 94; *see also Begum*, 2000 WL 554953, at *3 (abstaining under *Burford* and recognizing that the "key issue of state family law . . . weighs in favor of abstention"); *DuBroff*, 833 F.2d at 562 ("Appellant says the [state regulatory] scheme here at issue is less complex than those at issue in other *Burford* cases; but even were this true, the fact that family law is at issue here makes abstention particularly appropriate.") (quotations and alterations omitted).

The fourth and fifth factors also weigh heavily in favor of abstention. As to the fourth factor, "Texas obviously needs a coherent domestic-relations policy," *Pollard*, 354 F. App'x at 95, particularly with regard to divorce and property subject to state court orders. As to the fifth factor, "Texas has created 'a special state forum for judicial review' of divorce actions. *See* Tex. Gov. Code Ann. § 24.601 *et. seq.*

15

(establishing a comprehensive system of family courts). It goes without saying that these courts have the experience and expertise in Texas divorce law that federal courts lack." *Pollard*, 354 F. App'x at 95. "To superimpose the jurisdiction of this Court upon the [state court] would needlessly interfere with the state's administration of its own affairs in an area where the [state court] has particular expertise." *Lawrence*, 932 F. Supp. at 579 (quotations omitted). These two factors thus weigh in favor of abstention. *See, e.g.*, *Metro Riverboat*, 142 F. Supp. 2d at 775 (abstaining under *Burford* and finding that "it would be a grave mistake" for the court to adjudicate the RICO claims before it, given "such action would disrupt the [state] regulatory scheme" in place).

More broadly, it is necessary to abstain in this case to avoid inconsistent judgments as to the property involved in both the state and federal actions. "[T]his case is not just a tort action between divorcing parties: the civil RICO claim is directed to the same property that is going to be allocated between the parties as a result of the decree." *DeMauro*, 115 F.3d at 99 (emphasis omitted). If this Court were to award Plaintiff the value of the community property at issue and the state court awarded at least some of that property to Mr. Peterson, "there is a possibility of conflict between judgments, requiring one of them to be modified to take account of the other. Otherwise, the state divorce decree's intended allocation of property could easily be frustrated." *Id.*; *DuBroff*, 833 F.2d at 562 ("Federal court intervention

16

in this case would . . . risk inconsistent state and federal adjudications[.]")
(quotations omitted); *cf. Begum*, 2000 WL 554953, at *4 (identifying the existence
of a closely-related state court case as a factor weighing in favor of abstention).

In any event, "abstention [doctrines] are not rigid pigeonholes into which
federal courts must try to fit cases. Rather, they reflect a complex of considerations
designed to soften the tensions inherent in a system that contemplates parallel
judicial processes." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12 n.9 (1987); *see, e.g.*,
*Begum*, 2000 WL 554953, at *1 (finding abstention appropriate even though the
"case [did] not square neatly with the factual underpinning of *Burford* itself").
"[T]he ultimate question is whether there are exceptional circumstances in which
abstention would clearly serve an important interest. Such an interest is potentially
present here." *DeMauro*, 115 F.3d at 99 (quotations and citations omitted)
(alterations omitted).[13] In light of these policy considerations and given that four of
the five *Burford* factors weigh in favor of abstention, the Court recommends
abstaining under *Burford* and dismissing the case without prejudice.[14]

---

[13] *DeMauro v. DeMauro* is strikingly similar to this case. The plaintiff in *DeMauro*, as here, filed
a civil RICO action in federal court during her pending divorce, alleging that her husband and
others used corporations they owned to "fraudulently conceal . . . separate and marital property to
prevent her from sharing in these assets." 115 F.3d at 95; *see* Second Am. Compl. at 24-25. Like
Mrs. Peterson, the plaintiff in *DeMauro* alleged RICO predicate acts of wire fraud and
"extortionate threats." *DeMauro*, 115 F.3d at 95; Second Am. Compl. at 31-32. Both plaintiffs
seek to recover property that was jointly owned and allegedly fraudulently transferred. *See
DeMauro*, 115 F.3d at 99; Second Am. Compl. at 38.

[14] Under *Burford*, when a plaintiff seeks damages only, the court should stay rather than dismiss
the case. *Quackenbush*, 517 U.S. at 731; *Guy*, 682 F.3d at 392 (same). Mrs. Peterson asks the Court

**B. The Court Should Abstain Under *Younger* Because Exercising Jurisdiction Would Interfere with Ongoing State Court Proceedings that Implicate an Important State Interest.**

"Under *Younger*, a federal court generally should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings." *Marlett v. Heath*, No. 18-CV-2812, 2018 WL 5723163, at *2 (N.D. Tex. Oct. 23, 2018), *report and recommendation adopted*, 2018 WL 5717431 (Oct. 31, 2018). These select state court proceedings include: "state criminal prosecutions, civil enforcement proceedings [akin to criminal prosecutions], and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quotations omitted); *accord Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016). "When a case falls into these categories, the court potentially invoking *Younger* considers 'whether there is (1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges.'" *Wilson v. York*, No. 17-CV-705, 2017 WL 1196219, at *2 (S.D. Tex. Mar. 31, 2017) (quoting *Google*, 822 F.3d at 222-23). These three factors are known as the *Middlesex* factors. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

As a threshold matter, this case falls under the third category of *Younger*

---

for equitable relief, thus dismissal is appropriate. Mrs. Peterson's claims can be brought in her state court action.

abstention because the state court proceedings involve orders that are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73. "Plaintiff's complaints in this Court are inextricably connected to an ongoing divorce proceeding in Texas court." *Wilson*, 2017 WL 1196219, at *2; *cf. Machetta*, 2017 WL 2805192, at *5. Plaintiff's allegations center on whether her husband fraudulently invested $270,000 of community property in Novus and whether he concealed $266,000 worth of community assets in violation of the state court's orders. Second Am. Compl. at 22, 24. Plaintiff not only requests that this Court order a return of all community assets to the United States, but she also asks the Court to place a constructive trust on Mr. Peterson's property. *Id.* at 28, 38.[15] Such marital and property disputes are "a traditional area of state concern." *Moore*, 442 U.S. at 435; *see, e.g.*, *Wilson*, 2017 WL 1196219, at *1 (abstaining under *Younger* when part of the relief sought by plaintiff was the return of property at issue in his ongoing divorce proceeding). The Court therefore turns to the three *Middlesex* factors, which weigh heavily in favor of abstention.

First, there was a state proceeding when Plaintiff filed her complaint in federal

---

[15] A constructive trust that would cover property at issue in state court is analogous to an injunction of state court proceedings, making *Younger* abstention an appropriate analysis. *See Lawrence*, 932 F. Supp. at 579 ("[P]laintiffs demand the imposition of a constructive trust on the Limited Partnership interests held by Cohn. . . . If granted, this remedy would, like an injunction, preempt the Surrogate's Court's effort to administer the Estate for which that court is responsible under state law. Abstention [under *Younger* is] therefore appropriate[.]") (quotations and citations omitted).

court. Plaintiff initiated the divorce proceeding in 2017 and it is still ongoing. *See* Second Am. Compl. at 24 (noting that the divorce proceeding is ongoing); Mot. to Withdraw, ECF No. 51, ¶ 4 (representing that the divorce proceedings have not been resolved). The first factor is thus satisfied. *See, e.g.*, *Wilson*, 2017 WL 1196219, at *2; *accord Shipula v. Tex. Dep't of Family Protective Servs.*, No. 10-CV-3688, 2011 WL 1882521, at *9 (S.D. Tex. May 17, 2011) ("Satisfying the first prong of the test, Plaintiff makes repeated judicial admissions that there are ongoing state judicial proceedings regarding the custody of her children and asks this Court to dismiss a state court suit to modify the divorce decree, references a state court date on October 2010, and mentions an ongoing case in CCL3 Court.") (quotations omitted).

Second, divorce and property disputes implicate important state interests. The "application of the *Younger* Abstention Doctrine to domestic relations cases is obvious and proper." *Shipula*, 2011 WL 1882521, at *9 (citing *Crouch v. Crouch,* 566 F.2d 486, 487 (5th Cir. 1978) and *Jagiella v. Jagiella,* 647 F.2d 561, 564 (5th Cir. 1981)); *see also McCray v. Spector*, No. 12-CV-169, 2012 WL 1563912, at *2 (N.D. Tex. May 3, 2012) ("[T]he province of family relations is an important and traditional area of state, and not federal, concern."). In Texas, even after a divorce decree is rendered, the court that rendered that decree "retains the power to enforce the property division." *Jasper v. Hardin Cty. Sheriff's Dep't*, No. 11-CV-408, 2012 WL 4480713, at *10 (E.D. Tex. Sept. 5, 2012) (citing Tex. Fam.

Code Ann. § 9.002), *report and recommendation adopted*, 2012 WL 4472261 (Sept. 26, 2012). Yet, Plaintiff seeks a constructive trust on the property at issue in the state court proceedings, and any order this Court issues pertaining to that property would disrupt proceedings in which the state court has great interest. *Cf. Lawrence*, 932 F. Supp. at 581 ("As far as *Younger* abstention is concerned, the complaint still demands a constructive trust over the limited partnership interests held by Cohn in connection with each claim. Imposing such a trust would restrain the Surrogate's pending efforts to administer the Estate."). This Court "is unconvinced that [it] has the authority to trump those [important state] interests under the circumstances by issuing orders which would directly affect the ongoing state court case." *Jasper*, 2012 WL 4480713, at *10.

Third, the state court proceeding is an adequate forum through which Plaintiff can bring her federal challenges.[16] "A federal court[ ] 'should assume that state court

---

[16] This factor is often framed as requiring a plaintiff to have an adequate opportunity to raise federal constitutional challenges in state court. *See, e.g.*, *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Here, Plaintiff does not allege any federal constitutional violations, only federal statutory violations (RICO). However,

> [t]here is no principled reason to distinguish between [statutory or constitutional federal challenges]. State courts are courts of general jurisdiction, and are fully capable of dealing with federal constitutional as well as statutory issues. If minimal respect for the state processes precludes any presumption that the state courts will not safeguard federal constitutional rights, then surely such respect extends to a state court's capacity to handle a federal statutory claim as well. . . . [T]he Court has found no cases holding that abstention is appropriate *only* in cases dealing with constitutional issues.

*Keystone Props., LLC v. Jacksonville Port Auth.*, No. 06-CV-894, 2007 WL 9719016, at *2 (M.D. Fla. June 22, 2007) (quotations and citations omitted). In fact, there are numerous RICO cases

procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary.'" *Shipula*, 2011 WL 1882521, at *9 (quoting *Pennzoil,* 481 U.S. at 15). State courts have concurrent jurisdiction to hear RICO claims, *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990),[17] and Plaintiff has made allegations in state court almost identical to the underlying facts in this case. *See* Fourth Amended Complaint, attached as Ex. 1 to Mot. to Dismiss, ECF No. 33.[18] If Plaintiff is ultimately unsatisfied with the results of her state court case, she has the right to appeal. *See Machetta*, 2017 WL 2805192, at *6 (exploring a plaintiff's appellate opportunities of family law proceedings in Texas). There is no reason to believe Plaintiff cannot

---

where courts have abstained under *Younger*. *See, e.g.*, *Lawrence*, 932 F. Supp. at 579; *Ambler v. Parks*, No. 08-CV-884, 2009 WL 545989, at *4 (E.D. Cal. Mar. 4, 2009); *Brandy Found. Animal Sanctuary v. San Bernardino Cty.*, No. 08-CV-2292, 2009 WL 10698907, at *10 (C.D. Cal. Jan. 26, 2009).

[17] In her response to the Court's Order to Show Cause, Plaintiff argues that federal courts have exclusive jurisdiction over RICO claims. *See* Show Cause Resp., ECF No. 59 ¶ 12 (citing *Hampton v. Long*, 686 F. Supp. 1202 (E.D. Tex. 1988)). *Hampton* is no longer good law. The Supreme Court, in *Tafflin v. Levitt,* held that "state courts have concurrent jurisdiction to consider civil claims arising under RICO." 493 U.S. at 467. The other claims that Plaintiff argues are exclusively federal—namely, money laundering and tax fraud—do not provide for private causes of action, *see infra* note 19, and thus do not serve as a bar to abstention. Plaintiff also argues that cases with facts giving rise to both RICO and state law claims should proceed in federal court. *See* Show Cause Resp., ECF No. 59 ¶ 6 (citing *Doe v. Norwich Roman Catholic Corp.*, 606 F. Supp. 2d 244 (D. Conn. 2009)). *Doe* did not involve abstention, and thus it is inapposite.

[18] Plaintiff also argues, in her response to the Order to Show Cause, that there are differences between her state and federal cases, particularly that the two cases have different defendants. Show Cause Resp., ECF No. 59 ¶¶ 8-9. Plaintiff cites to no authority demonstrating that this should preclude abstention. In any event, both cases are based on virtually identical underlying facts and Mr. Peterson, the main target of the relief requested, is a defendant in both cases.

adequately bring her RICO claims in state court, and thus the third *Middlesex* factor has been met. *See, e.g.*, *McCray*, 2012 WL 1563912, at *2.[19]

The Court, therefore, finds *Younger* abstention to be appropriate and recommends dismissing the case without prejudice on that basis.[20]

## CONCLUSION

The Court recommends that the Defendants' motions to dismiss, ECF Nos.

---

[19] Plaintiff has already asserted virtually identical claims in state court other than the RICO claim. While expressing no opinion on the validity of the RICO claim or the alternative individual claims, the Court notes that several of Mrs. Peterson's individual federal claims do not provide for private causes of action. *See Kissi v. U.S. Dep't of Justice*, 444 F. App'x 457 (D.C. Cir. 2011) (18 U.S.C. § 1957); *Sechler-Hoar v. Tr. U/W of Gladys G. Hoart*, No. 17-CV-1968, 2018 WL 3715277, at *2 (D. Conn. Aug. 3, 2018) (18 U.S.C. § 7203)*; Hao Liu v. City of Allen*, No. 17-CV-874, 2018 WL 2144363, at *4 (E.D. Tex. Mar. 12, 2018) (18 U.S.C. §§ 1343 and 1512), *report and recommendation adopted*, 2018 WL 2129451 (May 9, 2018)*; Dukes v. Fed. Reserve Cent. Bank*, No. 17-CV-2510, 2017 WL 4990682, at *2 (N.D. Tex. Sept. 19, 2017) (15 U.S.C. § 78dd-1), *report and recommendation adopted*, 2017 WL 4990650 (Oct. 30, 2017)*; Gipson v. Deutsche Bank Nat'l Tr. Co.*, No. 13-CV-4820, 2015 WL 11120538, at *20 (N.D. Tex. Oct. 27, 2015) (26 U.S.C. § 7201); *I-Remiel Azariah: Ibn Yahweh v. Shelby Cty. Gen. Sessions Court*, No. 12-CV-3073, 2014 WL 1689297, at *8 (W.D. Tenn. Apr. 29, 2014) (18 U.S.C. § 7206)*; de Pacheco v. Martinez*, 515 F. Supp. 2d 773, 787 (S.D. Tex. 2007) (18 U.S.C. § 1956)*; Quinn v. United States*, No. 03-CV-192, 2003 WL 22133715, at *2 (W.D. Okla. July 10, 2003) (31 U.S.C. § 5313), *aff'd*, 94 F. App'x 740 (10th Cir. 2004).

[20] The Fifth Circuit has held that "requests for monetary damages do not fall within the purview of the *Younger* abstention doctrine," *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988), and even if they did, "the proper course of action is for a district court to stay the claims for damages pending the outcome of the state proceedings, such that they can move forward without interference." *Boyd v. Farrin*, 575 F. App'x 517, 519 (5th Cir. 2014); *see, e.g.*, *Floyd v. Amite Cty. Sch. Dist.,* 376 F. Supp. 2d 693, 697 (S.D. Miss. 2005) (dismissing claims for declaratory relief and staying claims for monetary damages under *Younger*). While Mrs. Peterson does request monetary damages, the request is so entangled in her requests for equitable relief (*i.e.*, the constructive trust and return of her assets from abroad) that the Court finds it appropriate to dismiss the entire case under *Younger*. Whatever monetary relief she separately requests for counts four through nine is only in the alternative to her RICO allegation. *See* Second Am. Compl. at 8 ("*In the alternative*, if it is found by judicial order that the pleadings herein do not support a RICO claim, then each count herein is an independent claim against the named Defendants in such claim.") (emphasis added).

24, 33, and 36, be **GRANTED** under the *Younger* and *Burford* abstention doctrines and the case be **DISMISSED WITHOUT PREJUDICE**. Defendants' motion to strike, ECF No. 38, is **MOOT.**

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); F**ED**. R. C**IV**. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed in Houston, Texas, on October 30, 2019.

**Dena Hanovice Palermo**
**United States Magistrate Judge**